FILED Rec'd 12/17/12
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ DEC 14 2012 C/M
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
ROBERT KELLY,

                Petitioner,

    - against -

PATRICK GRIFFIN,

               Respondent.
----------------------------------------------------------- X

**MEMORANDUM**
**DECISION AND ORDER**

12 Civ. 3384 (BMC)

**COGAN**, District Judge.

Petitioner brings this proceeding pursuant to 28 U.S.C. § 2254 to challenge his conviction for first degree robbery and first degree burglary, for which he was sentenced, as a persistent violent felony offender under New York law, to concurrent prison terms of twenty-five years to life.

The facts shown at trial can be simply stated: this was a push-in robbery in which petitioner and several much younger accomplices (petitioner was in his thirties or forties; his accomplices were teenagers, some as young as 14), including one named Jawanza White, forced the victim, Alfred Wang, into the stairwell of his building as he returned to his apartment. One of the accomplices held a gun to Wang's face and petitioner rifled through Wang's pockets, taking his cell phone, keys, and wallet. Petitioner demanded Wang's PIN number for the ATM card in his wallet, striking Wang in the process, at which point Wang provided the PIN number. Petitioner then left Wang with his accomplices while he twice unsuccessfully attempted to loot Wang's bank account using the ATM card, returning to confront Wang between the two attempts because the PIN number was not working. After about an hour, petitioner and his accomplices freed Wang, who flagged down a police car and reported the crime. Petitioner's accomplice,

White, was later arrested in connection with an unrelated robbery. White confessed to that robbery as well as the Wang robbery and identified petitioner as having participated in the Wang robbery. White, pursuant to a cooperation agreement, and Wang both testified against petitioner at trial. Additional facts will be set forth below as necessary to discuss each of petitioner's points of error raised in this proceeding.

The petition raises three points: (1) although the pretrial suppression hearing court properly suppressed Wang's lineup identification of petitioner, it erroneously found that Wang had an independent source for identifying petitioner at trial, and thus violated petitioner's rights under the Fourth Amendment; (2) the trial court violated petitioner's right to due process and a jury trial when, during deliberations, it questioned a juror about a child care problem outside the presence of the other jurors without instructing the other jurors to refrain from deliberating until the questioned juror returned; and (3) petitioner's sentencing as a persistent violent felony offender pursuant to N.Y. Penal Law § 70.08 violated the holding of Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000). In addition, the petition alludes to the fact that petitioner intended to file a collateral challenge to his conviction. The record that respondent has subsequently submitted to the Court includes the papers on petitioner's motion to vacate his conviction pursuant to N.Y. Crim. Proc. Law § 440.10 for ineffective assistance of counsel, including the § 440 court's denial of that claim, and I will deem the petition amended to include that point as well.

Petitioner's points appear to be either non-cognizable on federal habeas corpus, procedurally barred, or without merit. Petitioner will be given the opportunity to show cause why the petition should not be denied.

I.   **Fourth Amendment/Independent Source Ruling**

Prior to petitioner's arrest, during the police investigation, Wang was shown a photo array that included a picture of petitioner. Wang said that both petitioner and another person in the photo array looked like the older robber, but he could not identify the robber with certainty from the photographs and wanted to see a lineup. Based on Wang's response to the photo array, the prosecutor submitted an affirmation in support of a "take out order" whereby petitioner, who was in jail on an unrelated charge, was made to appear in a lineup before Wang. In that supporting affidavit, the prosecutor overstated Wang's identification of petitioner in the photo array – she averred that Wang had tentatively picked petitioner by name out of the photo array – and overstated White's confession in support of her probable cause argument. The state court, based on the allegations in the affirmation, found probable cause to require petitioner to appear in a lineup. Once petitioner was produced for the lineup, Wang identified him.

The suppression court held that because the prosecutor had exaggerated the probable cause for obtaining petitioner's presence in the lineup, the results of the lineup had to be suppressed. The ruling was essentially a sanction for the prosecutor's misconduct; it did not find any infirmity with the lineup itself or a lack of probable cause, noting that "both the composition and the conduct of the lineup are without legal infirmity." In essence, the suppression court held that although there was sufficient probable cause to have petitioner appear in the lineup, the prosecutor's overstatements meant there had been no "valid" showing of probable cause.

However, after a subsequent independent source hearing (which petitioner did not attend, presumably so that Wang could not identify him from his presence at the hearing), the suppression court held that notwithstanding the suppression of the lineup identification, Wang would be permitted to identify petitioner at trial, pursuant to the independent source rule, because

3

Wang's identification of petitioner was not "tainted" by the lineup. The suppression court noted that the robbery of Wang lasted approximately an hour; that petitioner was with Wang for between 12 and 23 minutes of that hour and petitioner had directly confronted Wang during that time; and that it was unlikely that Wang was confusing petitioner with his other assailants, who were much younger than petitioner (some were 14 years old). It concluded that Wang "had a fair and adequate opportunity and prolonged opportunity to view" petitioner during the attack. Thus, the suppression court held that the Fourth Amendment did not preclude Wang from identifying petitioner at trial as "fruit of the poisonous tree" under the test set forth in Manson v. Braithwaite, 432 U.S. 98, 97 S. Ct. 2243 (1977). The Appellate Division, on direct appeal, sustained the suppression court's ruling on the merits. People v. Kelly, 68 A.D.3d 895, 889 N.Y.S.2d 491 (2d Dep't 2009), aff'd on other grounds, 16 N.Y.3d 803, 921 N.Y.S.2d 640 (2011).

It appears that petitioner's challenge to the suppression court's rulings is not cognizable on federal habeas corpus review for two reasons.

First, the claim is unexhausted. "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State[.]" 28 U.S.C. § 2254(b)(1)(A). An applicant has not exhausted all state court remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). The Second Circuit has adopted a two-part test to determine if the requisite exhaustion has occurred: petitioner must have (1) "fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts[;]" and (2)

4

"utilized all available mechanisms to secure appellate review of the denial of that claim." Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981).

Although petitioner sought, and obtained, leave to appeal the Appellate Division's decision on all of his issues to the New York Court Appeals, the record discloses that this issue was not briefed in the Court of Appeals and thus the Court of Appeals never had the opportunity to consider it. This means that the claim is unexhausted, as petitioner did not "utilize all available mechanisms" to obtain review. Id. See also O'Sullivan v. Boerckel, 526 U.S. 838, 119 S.Ct. 1728 (1999); Smith v. Duncan, 411 F.3d 340 (2d Cir. 2005); Gray v. Hoke, 933 F.2d 117 (2d Cir. 1991). Moreover, because proceedings on his direct appeal are completed and there is no procedure under state law for petitioner to reassert this claim, the claim is deemed exhausted but procedurally barred. See Acosta v. Artuz, 575 F.3d 177 (2d Cir. 2009).

In addition to being procedurally barred, federal habeas corpus review of petitioner's Fourth Amendment claim appears to be subject to the rule of Stone v. Powell, 428 U.S. 465, 96 S. Ct. 3037 (1976). There, the Supreme Court held that federal habeas corpus review is unavailable for Fourth Amendment claims where the petitioner has had the opportunity to fully litigate the claim in state court: "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. at 494, 96 S. Ct. at 3052. The Supreme Court reasoned that, in the habeas context, "the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force." Id. at 494-95, 96 S. Ct. at 3052-53.

Based upon Stone, the Second Circuit has held that habeas review of decisions implicating the exclusionary rule is limited to situations in which "the state provides no corrective procedures at all to redress Fourth Amendment violations," or where there is a corrective procedure "but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process." Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977) (en banc). Courts have repeatedly recognized that New York provides an adequate corrective procedure for Fourth Amendment claims. See, e.g., Capellan v. Riley, 975 F.2d 67 (2d Cir. 1992); Guzman v. Greene, 425 F. Supp. 2d 298 (E.D.N.Y. 2006); Crispino v. Allard, 378 F. Supp. 2d 393 (S.D.N.Y. 2005). For this reason, courts within this Circuit have almost uniformly held that challenges to a state court's independent source determinations are not reviewable under Stone v. Powell. See, e.g., Philbert v. Brown, No. 11-cv-1805, 2012 WL 4849011 (E.D.N.Y. Oct. 11, 2012); Garcia-Lopez v. Fischer, No. 05 Civ. 10340, 2007 WL 1459253 (S.D.N.Y. May 17, 2007); Crispino, 378 F. Supp. 2d 393.[1]

Here, petitioner has not demonstrated any infirmity with the suppression court's determination of his Fourth Amendment claim except his disagreement with its result. He clearly had a full and fair opportunity to litigate the claim and in fact did so, all the way through

---

[1] In Young v. Conway, 698 F.3d 69 (2d Cir. 2012), the Second Circuit exercised its discretion to decline application of Stone v. Powell and undertook a review of the merits of an independent source determination where the State had failed to raise Stone v. Powell in the district court. The Circuit held that Stone v. Powell is a prudential and equitable, not jurisdictional, doctrine that can therefore be waived.

In support of its holding of the non-jurisdictional nature of Stone v. Powell, the Circuit cited Davis v. Blackburn, 803 F.2d 1371 (5th Cir. 1986) (per curiam). See Young, 698 F.3d at 86 n.10. Davis, like all other cases that have considered the issue, also held that a federal court, in the exercise of discretion, may raise Stone v. Powell *sua sponte*. See, e.g., United States. v. Ishmael, 343 F.3d 741 (5th Cir. 2003); Herrera v. Lemaster, 225 F.3d 1176 (10th Cir. 2000); Tart v. Massachusetts, 949 F.2d 490 (1st Cir. 1991); cf. Woolery v. Arave, 8 F.3d 1325 (9th Cir. 1993) (contrary to Young v. Conway, holding that district court must raise Stone v. Powell *sua sponte* if the State does not). Because I have identified the Stone v. Powell issue *sua sponte* as a matter of discretion prior to any submission by respondent, there is no issue of waiver.

the Appellate Division, until he abandoned it in the New York Court of Appeals. It thus appears that Stone v. Powell precludes review of his claims.

However, because petitioner has not had the opportunity to address his failure to exhaust his Fourth Amendment claim in the New York Court of Appeals or the application of Stone v. Powell, he will be given the opportunity to do so, as described below.

## II. Jury Deliberations Issue

Following five hours of jury deliberations, a court officer informed the trial court that juror number two had expressed concern about a child care issue if the jury deliberated too late in the day. The trial court conferred with the parties. Initially, both sides suggested that the trial court advise the juror that deliberations would suspend at 5 p.m. if they had not reached a verdict. The trial court expressed the concern that giving a specific time of adjournment might influence the jury to reach a verdict by that time, which might be sooner than it would otherwise reach a verdict. The trial court suggested, instead, that it would have the court officer take juror number two aside and ask her if she needed him to make a call on her behalf to let the person who was caring for her children know that she might be late. Both sides affirmatively consented to that procedure.

The record shows that their consent occurred at 4:34 p.m., and the court officer was dispatched to deliver the message. The record further shows that less than six minutes later, the court officer returned and advised the trial court and parties that the person who the juror had to call only spoke Arabic, and thus she needed to make the call herself. Both parties then agreed to dismiss the jury for the day at that point. The trial court called the jurors into the courtroom and dismissed them for the day, advising them that they could not resume deliberations until all of them were present the next day. The next day's deliberations did not yield a verdict, and the trial

court again dismissed the jury for the day, and again admonished them that they could not start deliberations the next morning unless all were present. The jury returned its guilty verdict the following day.

On direct appeal, petitioner contended that the court officer's conversation with the juror to make a call on her behalf, outside the presence of the jury, and without a specific instruction to the jury that it must cease deliberations while the court officer conferred with juror number two, violated his statutory and constitutional right to have the jury deliberate only when they were all together. Both the Appellate Division and the New York Court of Appeals held that by consenting to the procedure suggested by the trial court without requesting an instruction to the whole jury, petitioner had failed to preserve this point of error, and that, in any event, it was without merit. Kelly, 68 A.D.3d at 896, 889 N.Y.S.2d at 492, aff'd, 16 N.Y.3d at 804, 921 N.Y.S.2d at 641.

A federal court should not address the merits of a petitioner's habeas claim if a state court has rejected the claim on "a state law ground that is *independent* of the federal question raised and *adequate* to support the judgment." Lee v. Kemna, 534 U.S. 362, 375, 122 S. Ct. 877, 885 (2002) (quoting Coleman v. Thompson, 501 U.S. 722, 111 S. Ct. 2546(1991)). When a state court rejects a petitioner's claim because he "failed to meet a state procedural requirement[,]" the procedural bar may constitute an adequate and independent ground for the state court's decision. Coleman, 501 U.S. at 729-30, 111 S. Ct at 2554. See also Murden v. Artuz, 497 F.3d 178 (2d Cir. 2007). State procedural grounds are only adequate to support the judgment and foreclose federal review if they are "firmly established and regularly followed" in the state. Lee, 534 U.S. at 376, 122 S. Ct. at 885 (quoting James v. Kentucky, 466 U.S. 341, 104 S. Ct. 1830 (1984)). If a state court rejects a specific claim on an adequate and independent state law ground, then a

federal court should not review the merits of the claim, even if, as in this case, the state court addressed the merits of the claim in the alternative. See Harris v. Reed, 489 U.S. 255, 264 n. 10, 109 S. Ct. 1038, 1044 n. 10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law."); Velasquez v. Leonardo, 898 F.2d 7 (2d Cir.1990).

It is well settled that New York's contemporaneous objection rule, codified at N.Y. Crim. Proc. Law § 470.05(2), is an independent and adequate state law ground that ordinarily precludes federal habeas corpus review. See, e.g., Downs v. Lape, 657 F.3d 97 (2d Cir. 2011). Here, because petitioner's trial counsel failed to object to the procedure outlined by the trial court or to request an instruction to the jury concerning it, the Appellate Division and the Court of Appeals properly invoked a state procedural bar.

Since the state courts properly relied on a procedural bar, the issue becomes whether any ground exists for reaching the merits notwithstanding that procedural bar. Procedural default on state law grounds may be overcome by a petitioner who either demonstrates "'cause' for the default and 'prejudice attributable thereto,' or . . . that [] failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" Harris, 489 U.S. at 262, 109 S. Ct. at 1043 (citations omitted). Although, in some circumstances, ineffective assistance of counsel can constitute "cause" sufficient to avoid a procedural default, see Murray v. Carrier, 477 U.S. 478, 488-89, 106 S. Ct. 2639, 2645-46 (1989), the ineffective assistance claim must itself have been exhausted in the state court. Edwards v. Carpenter, 529 U.S. 446, 120 S. Ct. 1587 (2000). A fundamental miscarriage of justice is characterized as "an extraordinary case, where a

constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" Murray, 477 U.S. at 496, 106 S. Ct. at 2649.

In the instant case, it does not appear that any of the requirements for avoiding the state courts' procedural bar can be met. On direct appeal, petitioner acknowledged the lack of preservation of the claim, yet did not even assert ineffective assistance of counsel,[2] perhaps recognizing that there was nothing objectively unreasonable nor prejudicial, see Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), about his counsel's not asking for a "cease deliberations" instruction during a five minute conversation between the court officer and juror number two, especially since the jury deliberations ended up going over three days.

Instead, petitioner argued on appeal that the need to cease jury deliberations when one juror is not present, even for a moment, is part of the "fundamental mode" of trial proceedings and petitioner implies that any violation requires a reversal *per se*, even where the claim was not preserved. This equates most closely to a "fundamental miscarriage of justice" argument, but the state courts did not accept it and I cannot either. First, a "fundamental miscarriage of justice" exists only when one who is actually innocent is wrongfully convicted. See Sawyer v. Whitney, 505 U.S. 333, 339-40, 112 S. Ct. 2514, 2518-19 (1992). There is nothing in this record to suggest actual innocence. Second, the importance of this issue has been grossly inflated in an attempt to create some reversible error, but it does not seem to come near to a fundamental miscarriage of justice. A few minutes of absence from a three day period of deliberations to discuss a child care issue is not of constitutional magnitude.

---

[2] Petitioner asserted a conclusory ineffective assistance claim as an alternative argument before the Second Department but did not present the argument to the Court of Appeals. In addition, in petitioner's § 440.10 motion, he raised various claims of ineffective assistance of counsel, but he did not contend that counsel was ineffective for failing to preserve this claim. See Point IV infra.

It therefore appears that petitioner's claim is procedurally barred. However, because petitioner has not had an opportunity to argue that the claim is not procedurally barred, he will be given such an opportunity, as described below.

### III. Apprendi and Crim. Proc. Law § 70.08

Petitioner admitted to his prior convictions at sentencing and was therefore sentenced as a persistent violent felony offender under N.Y. Crim. Proc. Law § 70.08. On direct appeal, petitioner contended for the first time that this statute is unconstitutional because it requires the trial court to make findings concerning petitioner's criminal history instead of requiring those findings by a jury. Petitioner relied on Apprendi in making this argument. Both the Appellate Division and the Court of Appeals rejected the claim as unpreserved. Kelly, 68 A.D.3d at 896, 889 N.Y.S.2d at 492, aff'd, 16 N.Y.3d at 804, 921 N.Y.S.2d at 641.

For the same reasons as set forth above, the claim is procedurally defaulted. Moreover, the Second Circuit has specifically upheld N.Y. Crim. Proc. Law § 70.08 against an Apprendi challenge. See Portalatin v. Graham, 624 F.3d 69 (2d Cir. 2010). I therefore reject this claim.

### IV. Ineffective Assistance of Counsel

Petitioner filed a collateral challenge to his conviction under N.Y. Crim. Proc. Law § 440.10 alleging ineffective assistance of trial counsel in that trial counsel failed to: (a) adequately cross-examine Wang; (b) ask for a further inquiry regarding a juror who had, allegedly, been sleeping; (c) hire an expert on cross-racial identifications; and (d) investigate defendant's alibi that he had been home with his wife at the time of the crime. On October 1, 2012, the § 440 court rejected these claims on the merits. It did not recite each of petitioner's points, holding that "there is no necessity for the court to examine each of the specific inconsistencies the defendant raises as examples of ineffective assistance of counsel[,]" because

11

"the defendant's motion is devoid of any factors which would demonstrate that counsel lacked any strategic o[r] legitimate basis for what defendant claims he failed to do." Petitioner failed to seek leave to appeal this decision from the Appellate Division.

For the same reasons set forth in Point I, supra, it appears that this claim is unexhausted. Since, however, the time to appeal has passed, the claim is deemed exhausted but procedurally barred. Just as with claims left unexhausted on direct appeal, it is well settled that failure to seek leave to appeal the denial of § 440.10 motion constitutes a failure to exhaust, and if the 30-day time period to seek leave to appeal has passed, as it has here, see N.Y. C.P.L. § 460.10(4)(a) ("Within thirty days after service upon the defendant of a copy of the order sought to be appealed, the defendant must make application pursuant to section 460.15 for a certificate granting leave to appeal to the intermediate appellate court"), then the claim is deemed exhausted but procedurally barred. See Thomas v. Greiner, 111 F. Supp. 2d 271, 277-78 (S.D.N.Y. 2000).

Since the petitioner did not expressly include the ineffective assistance claims in his petition, he will be provided with an opportunity to demonstrate whether there is a basis to hear these claims despite what appears to be a procedural bar.

## CONCLUSION

Because petitioner has not had the opportunity to address some of the points contained in this Memorandum Decision and Order, he is granted twenty days from the date of this Order to submit a response limited to the following issues: (1) why his Fourth Amendment/independent source claim is not unexhausted and procedurally barred (for not pursuing it in the New York Court of Appeals), and cognizable in light of Stone v. Powell; (2) why his jury deliberation claim is not procedurally barred; and (3) why his ineffective assistance of counsel claim is not procedurally barred. Petitioner's Apprendi claim is denied. Respondent need not respond to the

remaining claims at this time; the Court will not grant the petition without allowing time for respondent to make a submission in opposition to the remainder of the petition.[3]

The Clerk of the Court is directed not to enter judgment at this time. A certificate of appealability shall not issue. See 28 U.S.C. § 2253(c). Further, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917 (1962).

**SO ORDERED.**

/S/ Judge Brian M. Cogan

U.S.D.J.

Dated: Brooklyn, New York
December 14, 2012

---

[3] There is a timeliness issue that the Court has not addressed. Petitioner's conviction became final on June 24, 2011. He sent a letter to this Court eight days before the expiration of his one-year time period under AEDPA, on June 16, 2012, asking for an extension of time to file his § 2254 petition because he intended to challenge his conviction in a § 440 motion in state court (which, as reflected above, he ultimately did). (Petitioner apparently did not realize that if he had filed his § 440 motion within the one-year period, that one-year period would have been tolled). The Clerk responded on or about July 2, 2012 (about a week after expiration of the one-year period) that petitioner could not obtain an extension because no proceeding was pending in which to grant it. Petitioner did not commence his § 440 proceeding until July 5, 2012, about two weeks after the expiration of the one-year period. If respondent wishes to assert that this proceeding is time-barred under these circumstances, he shall submit a letter brief limited to that issue within 20 days of entry of this Memorandum Decision and Order.