UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                               :
ROBERT KELLY,                                                  :    **MEMORANDUM**
                                                               :    **DECISION AND ORDER**
                                      Petitioner,              :
                                                               :    12 Civ. 3384 (BMC)
                  - against -                                  :
                                                               :
PATRICK J. GRIFFIN,                                            :
                                                               :
                                      Respondent.              :
-------------------------------------------------------------- X

**COGAN**, District Judge.

By Memorandum Decision and Order entered December 14, 2012, I analyzed the claims raised in petitioner's habeas corpus petition brought pursuant to 28 U.S.C. § 2254. Kelly v. Griffin, No. 12 Civ. 3384 (BMC), 2012 WL 6569769 (E.D.N.Y. Dec. 14, 2012) (the "December Order"). Although familiarity with the December Order is assumed, it can be summarized as follows.

First, review of petitioner's Fourth Amendment challenge to the state courts' holding that an eyewitness had an independent basis for identifying petitioner at trial, notwithstanding suppression of the witness's lineup identification of him (the "Fourth Amendment claim"), appeared to be barred for two reasons: (a) Stone v. Powell, 428 U.S. 465, 96 S. Ct. 3037 (1976), does not permit review of Fourth Amendment claims on federal habeas corpus;[1] and (b) although

---

[1] The Court raised the Stone v. Powell issue *sua sponte* in the December Order. Although the judges of the Second Circuit are divided with regard to whether the Stone v. Powell bar can be waived and whether a court *must* raise the issue *sua sponte* where it applies, compare Young v. Conway, __ F.3d __ , 2013 WL 1749701, at *7 (2d Cir. Apr. 23, 2013) (Parker, J., concurring in the denial of rehearing en banc) ("the weight of authority is that courts may, but are not required, to raise Stone *sua sponte*"), with id. at *11 (Raggi, J., dissenting from the denial of rehearing en banc) (opining that "that courts may not excuse petitioners from" their burden under Stone v. Powell), there is no dispute that a court *may* raise Stone v. Powell *sua sponte*.

petitioner had obtained leave to appeal that claim (along with others) from and to the New York Court of Appeals, it had not been briefed in that Court. Its abandonment, the December Order stated, suggested that it should be deemed exhausted but procedurally barred from federal habeas corpus review. December Order, at *3.

Second, petitioner's claim that the jury had improperly been allowed to deliberate with one of its members absent for a few minutes (the "Jury Deliberation claim") was procedurally barred because no objection had been raised at trial, and the Appellate Division had deemed it unpreserved. December Order, at *6.

Third, the Appellate Division had also held that petitioner's challenge to the constitutionality of his sentence as a persistent violent felony offender pursuant to New York Penal Law § 70.08 (the "§ 70.08 claim") under Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000), was unpreserved, and thus my review was procedurally barred. December Order, at *6. In addition, the Second Circuit had previously rejected the same challenge to § 70.08. See Portalatin v. Graham, 624 F.3d 69 (2d Cir. 2010).

Fourth, the proper disposition of petitioner's claim of ineffective assistance of trial counsel (the "§ 440.10 claim") appeared to be to deem it exhausted but procedurally barred, because although petitioner had brought a *pro se* challenge under New York Crim. Proc. Law § 440.10 based on the claim, he had not sought leave to appeal the denial of his claim to the Appellate Division, and the time to do so appeared to have passed. December Order, at *6-7.

I did not enter a final ruling on any of these points except the § 70.08 claim. As to the others, I afforded petitioner an opportunity to show cause why I should not rule in the manner indicated, as he had not addressed these points in his petition. Petitioner responded to the December Order as follows:

2

> (1) As to the Fourth Amendment claim, petitioner argued (a) that he did not receive a full and fair hearing in the state court and, thus, review was not precluded by Stone v. Powell; and (b) that the Court should stay and abate his petition pending his filing and exhaustion of a *coram nobis* motion in the Appellate Division, in which he intended to argue that his appellate counsel was ineffective for abandoning the Fourth Amendment point in his brief to the New York Court of Appeals;
>
> (2) As to his claim of ineffective assistance of trial counsel, petitioner submitted a letter from the Appellate Division showing that he had, in fact, moved for leave to appeal the denial of his § 440.10 motion, and that the motion had been calendared for December 28, 2012.

Petitioner did not further address his Jury Deliberation claim or his New York Penal Law § 70.08 claim. Those claims are therefore denied for the reasons stated in the December Order. The two remaining claims are disposed of as follows.

## I. The Fourth Amendment (Independent Source) Claim

By letter dated March 15, 2013, petitioner filed in this Court a copy of the *coram nobis* petition that he was concurrently prosecuting in the Appellate Division. Because petitioner is asking for a stay and abatement of these proceedings pending disposition of his *coram nobis* petition, the addition of the new and unexhausted ineffective assistance of appellate counsel claim might suggest that petitioner now has a "mixed petition" subjecting the case to evaluation under Rhines v. Weber, 544 U.S. 269, 125 S. Ct. 1528 (2005). However, petitioner, as part of his submissions in this proceeding, has included a letter that he had received from his appellate counsel at the time of the proceedings before the New York Court of Appeals. In it, appellate counsel explained that notwithstanding the Court of Appeals' failure to specify the issues on which it was granting leave to appeal, the Court of Appeals could not hear the Fourth Amendment claim, and he was therefore not going to brief it:

> When we were in the Appellate Division, I also argued that, at the independent source hearing, the prosecution failed to prove that Wang had a basis independent

of the tainted lineup identification, for making a potential in-court identification. However, because that argument was "fact" based, it could not be made in the Court of Appeals. Except in a capital murder case, the Court of Appeals has no power to overturn a lower court's factual determination.

Although not phrased in a precisely accurate manner, counsel's position was essentially correct, and this Court's December Order was in error insofar as it found petitioner's Fourth Amendment claim unexhausted. The lower state courts' determination that there was an independent source for the witness (Wang) to identify petitioner notwithstanding the suppressed lineup was not technically a question of fact; it was a mixed question of law and fact. But as to mixed questions of law and fact, especially in the Fourth Amendment context (where they frequently arise), the New York Court of Appeals has consistently held that, like questions of fact, it has no power of review unless there is no evidence in the record to support the lower courts' conclusion. See People v. Vandover, 20 N.Y.3d 235, 239, 958 N.Y.S.2d 83 (2012) ("The conclusion that no probable cause existed to arrest defendant is a mixed question of law and fact for which there is support in the record and is therefore otherwise unreviewable") (internal citations omitted); People v. Omowale, 18 N.Y.3d 825, 827, 938 N.Y.S.2d 831 (2011) ("The Appellate Division's determination that the police reasonably could have concluded that a weapon was located in defendant's vehicle . . . was a mixed question of law and fact for which there is support in the record. The court's determination is therefore beyond our further review.") (internal citations omitted); People v. Williams, 17 N.Y.3d 834, 835, 930 N.Y.S.2d 530 (2011) ("The reasonableness of a seizure, the existence of probable cause or reasonable suspicion, the classification of a detention as an arrest and the attenuation of evidence from police misconduct are all mixed questions of law and fact that are beyond this Court's review unless there is no record support for the determinations of the court below."); People v. Brisco, 99 N.Y.2d 596, 597, 758 N.Y.S.2d 262 (2003) ("Whether a crime scene showup is unduly

suggestive is a mixed question of law and fact. Thus, if record evidence supports the determination below, this Court's review is at an end.").

These cases establish that after the decision of the Appellate Division, petitioner did not have "the right under the law of the State to [further] raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). Although the unrestricted grant of leave to appeal by the Court of Appeals suggested to me that it was including this issue, a closer review of its jurisdiction compels the conclusion that it could not have considered petitioner's Fourth Amendment claim, and that is at least one reason why appellate counsel did not raise it. Accordingly, contrary to the suggestion in my December Order, petitioner's Fourth Amendment claim has been properly exhausted.

That leaves us, then, with petitioner's argument that Stone v. Powell does not preclude review of his Fourth Amendment claim because he did not have a full and fair hearing in the state court, essentially, that the state court hearing did not comport with notions of due process. See Cameron v. Smith, No. 11 Civ. 5100 (BMC), 2012 WL 1004893, *3 (E.D.N.Y. March 23, 2012) (noting similarity between Stone v. Powell exception and due process considerations). Although petitioner properly states the exception to Stone v. Powell, he cannot bring himself within it. His only complaint is that the suppression court judge reached the wrong result, giving too much credibility to the eyewitness and improperly evaluating the impact of the witness having seen petitioner in the lineup previously.

That is not a structural infirmity sufficient to escape the reach of Stone v. Powell. There is no suggestion, for example, that the suppression court refused to hear from any particular witness, or eliminated cross-examination, or cut off the hearing prematurely. Cf. Herrara v. Lemaster, 225 F.3d 1176, 1178 (10th Cir. 2000) (finding Stone to be inapplicable where state

5

appellate court reviewed suppression court's decision under a constitutionally deficient standard). Instead, petitioner argues that preventing him from raising this claim on federal habeas corpus review will blunt the deterrent effect of the exclusionary rule. But that is exactly the argument that Stone rejected. Thus, New York law furnished, and petitioner received, adequate due process with regard to his Fourth Amendment claim. Petitioner's disagreement with the suppression court's ruling does not allow circumvention of Stone v. Powell.

**II. Ineffective Assistance of Trial Counsel**

In the December Order, I noted that based on the record before me at that time, petitioner had failed to seek leave to appeal the denial of his § 440.10 motion to the Appellate Division, and thus it appeared, since the time to do had expired, that the claim should be deemed exhausted but procedurally barred. Petitioner, in response to the December Order, submitted documents showing that that the Appellate Division had calendared a motion for leave to appeal, thus strongly suggesting that he had in fact filed it. I directed respondent to furnish all of the submissions on the § 440.10 motion and the Appellate Division's disposition thereof. Respondent's submissions in compliance with that Order include a decision of the Appellate Division dated April 30, 2013, which summarily denied leave to appeal. I therefore conclude that petitioner has fully exhausted his ineffective assistance of trial counsel claim.

In his § 440.10 motion, petitioner claimed that his trial counsel was constitutionally ineffective for the following reasons: (a) he failed to effectively cross-examine several prosecution witnesses on alleged inconsistencies in their direct testimony; (b) he failed to demand an inquiry concerning an allegedly sleeping juror; (c) he failed to hire an expert on cross-racial identification (the victim is Asian, petitioner is black); and (d) he failed to investigate petitioner's alibi that he was home with his wife when the crime had been committed.

6

The § 440.10 court at *nisi prius* denied his motion on the merits. In a short but reasoned decision, it held that petitioner had failed to show an absence of strategic or legitimate reasons for trial counsel's decision not to raise the alleged inconsistencies in the witness's testimony. With regard to the decision not to call petitioner's wife, the § 440.10 court concluded that trial counsel could have reasonably believed that petitioner was better off arguing reasonable doubt as to Wang's identification than shifting the focus to the credibility of an obviously interested witness, the rejection of which might further compel his conviction. The § 440.10 court rejected the remainder of petitioner's ineffective assistance claims summarily.

The § 440.10 court's decision addressed the merits of petitioner's claims. The standard of review for a decision on the merits is set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d). That statute provides that a federal court may grant habeas relief to state prisoners with respect to any claim that was adjudicated on the merits in state court proceedings, only if the adjudication of the claim resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Id. The decision of a state court is "contrary" to clearly established federal law within the meaning of § 2254(d)(1) if it is "diametrically different" from, "opposite in character or nature" to, or "mutually opposed" to the relevant Supreme Court precedent. Williams v. Taylor, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519 (2000) (internal quotation marks omitted). Moreover, a state-court decision involves "an unreasonable application" of clearly established federal law if the state court applies federal law to the facts of the case "in an objectively unreasonable manner." See Brown v. Payton, 544 U.S. 133, 141, 125 S. Ct. 1432, 1439 (2005).

The Supreme Court has clarified that the AEDPA standard of review is extremely narrow, and is intended only as "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Ryan v. Gonzales, __ U.S. __ , 133 S. Ct. 696, 708 (2013) (quoting Harrington v. Richter, __ U.S. __ , 131 S. Ct. 770, 786 (2011)). State court decisions must "be given the benefit of the doubt," Felkner v. Jackson, __ U.S. __ , 131 S. Ct. 1305, 1307 (2011) (quoting Renico v. Lett, 559 U.S. 766, __ , 130 S. Ct. 1855, 1862 (2010)), and "even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable." Harrington, 131 S. Ct. at 786. Indeed, in Harrington, the Supreme Court went so far as to hold that a habeas court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Id. This standard of "no possibility" of disagreement among "fairminded jurists" as to the existence of legal error is arguably the narrowest standard of judicial review in the law. Moreover, the Supreme Court clearly expressed a lack of patience with lower courts that view its pronouncements as permitting a substantial measure of flexibility in applying this standard. See Parker v. Matthews, __ U.S. __ , 132 S. Ct. 2148 (2012).[2]

In the present case, the issue before the Court is thus whether the § 440.10 court's decision was contrary to, or involved an unreasonable application of, the standard set forth by the

---

[2] Harrington and Cavazos v. Smith, __ U.S. __ , 132 S. Ct. 2 (2011), may have abrogated the oft-quoted language in Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000), that while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" The Harrington/Cavazos standard may not quite require "judicial incompetence," id., but by precluding relief except where the error is "beyond any possibility for fairminded disagreement," 131 S. Ct. at 787, it certainly comes close. The Second Circuit has noted that these Supreme Court decisions have narrowed the standard of habeas review that the Circuit previously applied. See Rivera v. Cuomo, 664 F.3d 20, 21-22 (2d Cir. 2011) (reversing its earlier decision instructing the district court to grant habeas relief upon consideration of Cavazos).

8

Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), in determining that petitioner was not deprived of effective assistance of counsel.

To satisfy the first prong of Strickland's two-part test, the performance prong, petitioner must show that counsel's performance "fell below an objective standard of reasonableness." Id. at 688, 104 S. Ct. at 2064. The record must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687, 104 S. Ct. at 2064. There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689, 104 S. Ct. at 2065. Nonetheless, this presumption may be overcome with evidence that counsel's conduct lacked a legitimate strategic basis. "[O]missions [that] cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness," may fall below the constitutional minimum standard of effectiveness. Eze v. Senkowski, 321 F.3d 110, 112 (2d Cir. 2003).

To satisfy the second prong of the Strickland test, the prejudice prong, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. "That "requires a 'substantial,' not just 'conceivable,' likelihood of a different result." Cullen v. Pinholster, __ U.S. __ , 131 S. Ct. 1388, 1403 (2011) (citing Harrington, 131 S. Ct. at 792).

Courts must also keep in mind that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Strickland, 466 U.S. at 696, 104 S. Ct. at 2069. Moreover, "the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal

9

representation . . . [but] simply to ensure that criminal defendants receive a fair trial." Id. at 689, 104 S. Ct. at 2065. Thus, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so *undermined* the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Cullen, 131 S. Ct. at 1403 (quoting Strickland, 466 U.S. at 686, 104 S. Ct. at 2064) (emphasis and alternation in Cullen).

Finally, the Court recognizes that because "[t]he standards created by Strickland and § 2254(d) are both highly deferential, . . . when the two apply in tandem, review is doubly so." Harrington, 131 S. Ct. at 788 (internal citations and quotation marks omitted).[3] The Supreme Court has emphasized that "[f]or purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law,'" and that "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself." Id. at 785. The Supreme Court has further instructed that "[u]nder § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786.

I see no error in the decision of the § 440.10 court, let alone error that would warrant relief under this stringent standard. As Strickland itself provides, the strategic choices of counsel are "virtually unchallengeable." 466 U.S. at 690-91, 104 S. Ct. at 2066. The few instances of

---

[3] The Second Circuit has repeatedly held that although New York's test for ineffective assistance of counsel under the state constitution differs from the federal Strickland standard, "New York['s] 'meaningful representation' standard is not contrary to the Strickland standard." See Rosario v. Ercole, 601 F.3d 118, 124 (2d Cir. 2010) (citing Eze, 321 F.3d at 123-24, and Lindstadt v. Keane, 239 F.3d 191, 198 (2d Cir. 2001)). "Even if the errors are harmless in the sense that the outcome would remain the same, a defendant may still meet the New York prejudice standard by demonstrating that the proceedings were fundamentally unfair. This is not a novel view – New York state courts have repeatedly asserted that the New York standard is, in practice and in intent, more generous to defendants than the federal standard." Rosario, 601 F.3d at 125-26 (concluding that, properly applied, the New York standard is not contrary to Strickland).

cross-examination that petitioner claims his attorney should have undertaken are either the product of a distorted view of the record (e.g., petitioner claims that Wang failed to pick petitioner out of the lineup, when in fact it is clear from the record that Wang did pick petitioner out of the lineup), or were based on an obvious strategic decision (e.g., trial counsel's determination not to point out that Wang had estimated his assailant's height as 5'10", when in fact petitioner is 5'7", a difference that, if raised, could easily have made counsel look desperate to the jury, considering that Wang's identification was otherwise accurate).

Petitioner's most viable point on this alleged series of cross-examination errors is that when Wang testified at trial that he had handed his wallet to petitioner, trial counsel should have impeached Wang with his testimony at the independent source hearing that he could not recall which of his assailants actually took the wallet. But petitioner's argument ignores the fact that Wang had given highly detailed testimony at the independent source hearing which, in every way save this one aspect, was completely consistent with his testimony at trial. If trial counsel had impeached Wang with this one detail from the independent source hearing, it might well have opened the door to his rehabilitation with his prior consistent testimony on every other detail. See People v. Ochoa, 14 N.Y.3d 180, 187, 899 N.Y.S.2d 66 (2010); People v. Holden, 82 A.D.3d 792, 793, 917 N.Y.S.2d 900 (2d Dep't 2011). It is not only that the harm from this impeachment could have outweighed the benefit – it almost certainly would have. And that is without even mentioning the risk that trial counsel, having successfully suppressed the lineup identification, might well have resurrected it, allowing the lineup identification to come in and further buttressing Wang's testimony if trial counsel had done what petitioner now says he should have done. See People v. Smalls, 115 A.D.2d 783, 784, 496 N.Y.S.2d 784 (2d Dep't 1985) ("any reference at trial to the photographic identification procedures was elicited by

defense counsel on cross-examination of the prosecution's witnesses. Consequently, defendant waived any possible objection to the admission of testimony on this subject.").[4]

Petitioner's other claims of ineffective assistance fare no better. The § 440.10 court concluded that trial counsel was not ineffective for failing to hire an expert on cross-racial identification. This was not an unreasonable application of Strickland, especially in light of the very detailed description that Wang gave of petitioner and adhered to throughout the case, and the fully corroborating testimony of petitioner's accomplice. It is not the law that effective assistance requires a defense lawyer to hire an identification expert every time a victim of one race identifies a defendant of another. See Perez v. Greiner, No. 02 Civ. 1436, 2003 WL 22427759, *14-15 (S.D.N.Y. Oct. 23, 2003) (report and recommendation).

Similarly, petitioner's claim that his attorney should have asked for an inquiry concerning a sleeping juror is belied by the record, as nothing in the record proves that a juror was sleeping. The trial judge simply made the observation that one juror appeared to have her eyes closed but he did not know for how long, and the prosecutor then stated "I was watching, she was paying attention, she must [have] looked down a few times, but she had her eyes open." It was not an unreasonable application of Strickland for the § 440.10 court to conclude that petitioner had not demonstrated objective unreasonableness in his attorney's decision not to pursue the matter further, and that petitioner had certainly not demonstrated prejudice under Strickland.

---

[4] As noted in the December Order, the lineup identification was not suppressed because of any infirmity in conducting the lineup, or suggestibility, or the reliability of Wang's identification of petitioner. As the hearing court found, Wang's identification of petitioner at the lineup was proper, the court stating that "both the composition and the conduct of the lineup are without legal infirmity." Rather, the identification was suppressed as a sanction because in obtaining a release order for petitioner's appearance in the lineup (he was currently being held on other charges), the prosecutor somewhat overstated the evidence against petitioner. There was thus no infirmity in the identification itself, and petitioner's trial counsel had to consider the risk that the lineup identification could be introduced to bolster Wang's in-court identification.

Finally, the § 440.10 court's conclusion that trial counsel could well have had a strategic reason for not calling petitioner's wife as an alibi witness was also not an unreasonable application of Strickland. Indeed, petitioner offered no proof in his § 440.10 motion that his wife would even provide an alibi for him, nor did he claim that he had alerted his trial counsel to this defense, something that would have been obvious even to a lay defendant.

Under the narrow standard of review dictated by § 2254(d), as described above, there is no basis for me to conclude that the § 440.10 court unreasonably applied Strickland in rejecting petitioner's ineffective assistance claim.

## CONCLUSION

For the reasons set forth above and in the December Order, the petition is denied and the case is dismissed. Because the petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253. Further, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 921 (1962).

**SO ORDERED.**

                                                      U.S.D.J.

Dated: Brooklyn, New York
       May 1, 2013